# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:12-CR-00028 |
| Plaintiff, | |
| v. | |
| DAVID A. SANTOS and ALBERT A. TAITANO, | **DECISION AND ORDER ON PRE-TRIAL MOTIONS** |
| Defendants. | |

At the May 10, 2013, motion hearing, the Court orally ruled on Defendants' various discovery motions in this matter (ECF Nos. 16, 34, 36, 37) and withheld ruling on one such motion (ECF No. 35).[1] This order explains the Court's reasoning.

## I. DISCUSSION

### A. IDENTIFYING EVIDENCE THE GOVERNMENT INTENDS TO USE, RULE 12(b)(4)(B) (ECF NO. 34-1)

This motion presents a dispute over the proper interpretation of Federal Rule of Criminal Procedure 12(b)(4)(B). This rule states that, "[a]t the Defendant's Request[,]. . . the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice

---

[1] Previously, this Court granted Defendants Santos and Taitano's motions for joinder (ECF Nos. 39, 41). (ECF No. 66.)

1

of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4)(B).

Defendants argue that the Government has an obligation under this rule to identify what specific evidence it will use in its case-in-chief. (ECF No. 34-1 at 3–6; ECF No. 54 at 2–3.) The Government argues that this obligation applies only to evidence subject to a suppression motion. (ECF No. 44 at 1 (hereinafter "Opposition").) Defendants reject this interpretation, arguing that the Government must "specifically identify the evidence it will use in its case-in-chief so that the defendant can then decide what suppression motions it should make." (ECF No. 54 at 2 (emphases removed).) Appearing to motivate Defendants' argument is the mountainous evidence the Government has already provided, making it difficult to find critical information. (*See* ECF No. 34-1 at 5; ECF No. 54 at 3.)

Similar disputes have played out in many district courts. "[C]riminal defendants do not want to comb through all of the government's evidence and identify every possible objection that could be made, when in reality the government anticipates putting forward only a small fraction of that evidence at trial." *United States v. Jacobs*, 650 F. Supp. 2d 160, 171 (D. Conn. 2009).

Despite the similarity of disputes, court resolutions have varied. Some have concluded that open-file discovery does not satisfy the rule. *United States v. de la Cruz-Paulino*, 61 F.3d 986, 992–994 (1st Cir. 1995); *see United States v. Lujan*, 530 F. Supp. 2d 1224, 1244–45 (D.N.M. 2008) (discussing district court cases so concluding). Going even further, at least two district courts have required that the government provides notice "of the evidence that it intends to use in its case-in-chief—that is, the evidence that will appear on the government's exhibit list for trial." *United States v. Anderson*, 416 F. Supp. 2d 110, 112 (D.D.C. 2006); *see also United States v. Moyer*, 726 F. Supp. 2d 498, 514 (M.D. Pa. 2010) ("[T]he Government will be ordered to provide Defendant with notice

as to which pieces of this evidence falling under Rule 16 discovery that it intends to use at trial."). On the opposite end of the spectrum, several courts have required only that the government "provide[] notice that it intends to offer some or all of the items made available in discovery . . . ." *Lujan*, 530 F. Supp. 2d at 1245 (discussing these cases).

But in the spectrum's middle resides reasoned court decisions focusing on Rule 12's purpose. This purpose is to "reduc[e] costs and conserv[e] judicial resources" by avoiding suppression motions for evidence the government does not intend to use. *See id.*; *see also* Fed. R. Crim. P. 12, Advisory Committee's Note to 1974 Amendment ("Although the defendant is already entitled to discovery of such evidence prior to trial under rule 16, rule 12 makes it possible for him to avoid the necessity of moving to suppress evidence which the government does not intend to use."); *Moyer*, 726 F. Supp. 2d at 514. Achieving this purpose does not require "forcing the government to reveal too much of its trial strategy . . . ." *See Jacobs*, 650 F. Supp. 2d at 171–72; *Lujan*, 530 F. Supp. 2d at 1245–46; *see also United States v. Candelaria-Silva*, 162 F.3d 698, 702 (1st Cir. 1998) (stating that this rule "was not designed to aid the defendant in ascertaining the government's trial strategy"). Rather, achieving it requires only "provid[ing] the defendant with sufficient information to file the necessary suppression motions." *Lujan*, 530 F. Supp. 2d at 1246; *United States v. Ishak*, 277 F.R.D. 156, 158–59 (E.D. Va. 2011).

This Court adopts the rule established in *Ishak*. There, the court limited the government's notification burden to evidence specifically identified by the defendant. *Ishak*, 277 F.R.D. at 159–60. This approach is most consistent with the rule's purpose. *See id.* Rule 12 was not "intended as a means to enable defendants to pinpoint particular pieces of evidence subject to suppression, but as a means to identify evidence for which a motion to suppress is not required." *See United States v. Western Titanium, Inc.*, Criminal No. 08–CR–4229–JLS, 2010 WL 4117294, *3 (S.D. Cal. Oct. 18,

3

2010). Thus, the defendant must first point to "specified evidence" when making its request to the government. *See* Fed. R. Crim. P. 12, Advisory Committee's Note to 1974 Amendment.

Here, Defendants do not point to any specific evidence in their request for Rule 12(b)(4)(B) disclosure. *See* ECF No. 34-1 at 1–2 (requesting disclosure of "any and all evidence or information . . . [that] the government presently or at any time contemplates or considers using in its case-in-chief"). This does not comply with the Court's interpretation of Rule 12(b)(4)(B), and thus, the motion is denied.

**B. DISCLOSURE OF CO-CONSPIRATOR STATEMENTS (ECF NO. 34-2)**

Defendants request this Court to compel the Government to disclose all out-of-court statements of Defendants' co-conspirators that the Government intends to introduce at trial. (*See* ECF No. 34-2 at 1.) For each statement disclosed, Defendants request a pre-trial determination as to their admissibility. (*Id.*)

Defendants' briefs cite no authority for this compulsion. Indeed, much, if not all, authority indicates that these statements are not subject to discovery. *E.g.*, *United States v. Roberts*, 811 F.2d 257, 258–59 (4th Cir. 1987) (per curiam) (en banc); *United States v. Gaddis*, 877 F.2d 605, 610 (7th Cir. 1989); *United States v. Williams-Davis*, 90 F.3d 490, 513 (D.C. Cir. 1996); *United States v. Zinnel*, Cr. No. S–11–0234 MCE (GGH), 2011 WL 5593109, *10 (E.D. Cal. 2011), *overruled on other grounds*, 2011 WL 6825684. Despite not being obligated, the Government believes it has already disclosed all co-conspirator statements. (Opposition at 4.)

It appears what Defendants actually desire is that the Government identify the exact co-conspirator statements it intends to use at trial. (*Id.* at 4.) Defendants reject this contention, arguing that they are seeking to conduct a pre-trial admissibility hearing. (ECF No. 55 at 1.) But if that is

4

their true intention, they would specifically identify the objectionable co-conspirator statement already disclosed to them. They have not.

Defendants do not cite any case for the proposition that a court must require the government to identify which co-conspirator statements it intends to use at trial. They do cite one case, but that case recognizes only that a district court has discretion to hold a pre-trial admissibility hearing on co-conspirator statements. (*Id.* at 2–4 (citing *United States v. Long*, 706 F.2d 1044, 1053 (9th Cir. 1983)). At this motion's hearing, Defendants conceded that the Court is not obligated to order the Government to identify the statements, but they urged the Court to exercise its discretion to do so. The Court declines to exercise its discretion and does not order the Government to identify which co-conspirator statements it intends to use at trial. Accordingly, this motion is denied.

### C. *DAUBERT* HEARING (ECF NO. 35)

Defendants requests a *Daubert* hearing on the admissibility of testimony from the Government's firearm identification witness, Michael Scanlan. (ECF No. 35.) They argue that this hearing will reveal that this evidence should be excluded, as it is the product of an unsound science. (*See id.* at 7–14.) But it appears that no court has excluded this evidence as unreliable. (*See, e.g.*, Opposition at 9.) Though Defendants discuss courts questioning the reliability of firearm identification (*see* ECF No. 35), these courts ultimately permit experts to testify on the condition that they limit their testimonial conclusions to a reasonable degree of certainty. *See United States v. Green*, 405 F. Supp. 2d 104, 108–09 (D. Mass. 2004); *United States v. Diaz*, No. CR 05-00167 WHA, 2007 WL 485967, *14 (N.D. Cal. Feb. 12, 2007). Here, the Government has no objection to so limiting Scanlan's testimony. (Opposition at 10–11.)

The Court has indicated its reluctance to hold a *Daubert* hearing on the Government's experts because an extensive one was already held in the prior proceeding, *United States v.*

5

*Mendiola*, Case No. 1:10-CR-00037 (D. N. Mar. I.). The Court can rely on the testimony produced there to assure the science's reliability. *See* Christopher B. Mueller & Laird C. Kirkpatrick, *Prerequisites—Testimony Must be Reliable:* Daubert *Standard, Sufficient Basis, Reliable Principles, Proper Application*, Federal Evidence § 7:10 (3d ed.) (Courts can, and often do, use "shortcuts . . . to avoid full-scale *Daubert* hearings . . . .").

However, the scientific standard has changed since the prior hearing, and the parties dispute this change's magnitude. (*See* ECF No. 35 at 17–22; ECF No. 59 at 2–4; Opposition at 9.) The Court may ultimately decide to hold a limited *Daubert* hearing solely to determine the extent of this standard's change on the science.

But the Court does not decide so now, instead withholding ruling on this motion because the Court lacks sufficient information. The parties are ordered to submit declarations of experts on the magnitude of this standard's change by July 10, 2013.

### D. EXPERT WITNESS TESTIMONY SUMMARY, RULE 16(a)(1)(G) (ECF NO. 36)

Defendants request a court order compelling the government to produce expert disclosures in compliance with Federal Rule of Criminal Procedure 16(a)(1)(G). (ECF No. 36 at 1.) They also request setting a specific deadline for this disclosure and to reset the scheduling order to accommodate these deadlines. (ECF No. 44.)

Rule 16(a)(1)(G) requires that the government "give to the defendant a written summary of any [expert] testimony that the government intends to use . . . during its case-in-chief at trial." *See* Fed. R. Crim. P. 16(a)(1)(G). This summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.*

Invoking this rule, Defendants request all the following: "a detailed document that lists each [expert's] opinion[,] . . . the bases and reasons supporting those opinions, . . . [and] the data or information that was considered by the expert forming his or her opinions." (ECF No. 44 at 3.)

The Government has provided extensive information regarding each experts' opinions and the bases thereof, but all these disclosures come from the prior case. (*See* Opposition at 6–7.) Some of these disclosures include expert declarations involving evidence in that matter; others are transcripts of expert testimony. (*Id.*) Supplementing this, the Government informed Defendants that the experts' opinions and bases for them remain the same. (*Id.* at 6; ECF No. 47-1 at 1.) These statements effectively incorporated the prior summaries and expert opinions into this matter, which the Court finds sufficient for satisfying the rule.

However, the Government has indicated that one of its experts, Michael Scanlan, will testify on new matters: the retesting of shells and a missed certification test. (ECF No. 47-1 at 1.) At this motion's hearing, neither the Government nor Defendants knew if the Government had disclosed any summaries relating to these matters. The Court orders the Government to discern whether they have already disclosed a Rule 16 written summary of Scanlan's testimony on these new matters. If the Government has not, it is ordered to provide this summary by June 17, 2013.

**E. DOCUMENTS SHOWING SIMILAR CRIMINAL ACTIVITY, RULE 16(a)(1)(E) (ECF NO. 37)**

Defendants request production, under Rule 16(a)(1)(E), of (1) all information available to the Government showing similar activity of fruit bat takings and (2) an un-redacted copy of a list showing this activity that the Government has already provided. (*See* ECF No. 37.) This list identifies the number, but not the identities, of people suspected of buying or poaching Rota fruit bats (*see* ECF No. 56 at 7–9), and the Government opposes producing any more information or an un-redacted list. (Opposition at 7–8.)

7

Under Rule 16(a)(1)(E), the government must provide the defendant with access to any documents that are "within the government's possession, custody, or control and: (i) . . . is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). The sought items do not fall into the latter two categories, so Defendants must show they are material, and the Government argues they have not. (Opposition at 8.)

Defendants contend these requested documents are material because "the government's case is based upon circumstantial evidence." (ECF No. 56 at 2.) Thus, the requested documents will show that "[a]nyone of the numerous people on the list could have possibly poached the bats." (*Id.*)

"A defendant must make a threshold showing of materiality, which requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'" *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995). Defendants have not met this threshold. Defendants have been provided ample evidence for arguing that anyone of the anonymous people on the list could have poached the fruit bats. It remains unclear how learning their identities or obtaining other documents furthers that argument. Notably, Designated Judge Houston reached the same conclusion when orally resolving this issue in the prior matter. Accordingly, Defendants have not made this threshold showing, and the request is denied.

Defendants' discussion of *United States v. Stever*, 603 F.3d 747 (9th Cir. 2010) is not persuasive. (ECF No. 56 at 2–3.) For *Stever* to matter here, it must hold that documents listing the identities of the potential alternative perpetrators are material where the defendant has already been provided documents listing the number of potential alternative perpetrators. It does not hold that. There, the district court both denied discovery of any documents detailing potential alternative perpetrators' activities—finding them irrelevant—and prohibited the defendant from introducing any

evidence on the point. *See Stever*, 603 F.3d at 751, 754. The Ninth Circuit held that the court's conclusion on irrelevancy was "a misapplication of the principles of logical relevance," and therefore, denying the defendant's motion to compel for being irrelevant was "an abuse of discretion." *See id.* at 754. This holding says nothing on the materiality of identity. *See id.* at 754–55 (not considering materiality because the documents were not before the court).

Nor does *Stever* address the situation here. The *Stever* court's relevancy holding is premised on the situation where the government refuses to disclose, in entirety, documents detailing potential alternative perpetrators. When viewed through this frame, of course these documents are relevant. But the Ninth Circuit did not consider the alternative frame, where the government discloses these documents, but redacts them for identity. In this frame, the baseline for determining relevancy and materiality changes: The materiality and relevancy of the non-redacted documents is not measured against non-disclosure, but against the redacted documents.

### F. EXPERT WITNESS DOCUMENTS, RULE 16(a)(1)(F) (ECF NO. 37)

Defendants request production, under Rule 16(a)(1)(F), of four classes of documents relating to expert witnesses and scientific testing: (1) un-redacted copies of all books, papers, and any other documents that were in any way relied upon by an expert witness who the Government intends to call in its case-in-chief; (2) all relevant laboratory protocols for any scientific test that is material to preparing the Defense or that the Government intends to use in its case-in-chief; (3) the results of any proficiency testing performed by any analyst who performed a scientific test that is material to preparing the Defense or that the Government intends to use in its case-in-chief; and (4) un-redacted copies of any audits conducted with respect to any laboratory where any scientific test was performed that is material to preparing the Defense or that the Government intends to use in its case-in-chief. (*See* ECF No. 37 at 3–4; ECF No. 56 at 4.) The Government opposes this request on the

9

grounds that Defendants have not met their burden of showing the documents' materiality. (*See* Opposition at 8.)

Under Rule 16(a)(1)(F), the government must provide a defendant with access to

> the results or reports of . . . any scientific test or experiment if: (i) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows—or through due diligence could know—that the item exists; and (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Fed. R. Crim. P. 16(a)(1)(F). Just as with subsection (a)(1)(E), "a defendant must make a prima facie showing of materiality." *See id.*; *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). The Government contends Defendants have not yet made this showing. (Opposition at 8.)

Whether or not these documents are material, they are not discoverable under this rule. The rule applies only to "results or reports of . . . any scientific experiment . . . ." Fed. R. Crim. P. 16(a)(1)(F). None of the requested items are such reports. Rather, they regard the underlying processes used: the sources relied upon, the laboratory protocols, and the analyst's proficiency. Laboratory processes are not discoverable under this rule. *See United States v. Price*, 75 F.3d 1440, 1444–45 (10th Cir. 1996) (holding that this provision does not allow for discovery of laboratory processes such as the reliability of equipment used or the underlying bases for the analyst's conclusions).

### G. OMNIBUS DISCOVERY REQUEST

Defendant Santos filed an omnibus discovery motion about three months prior to the above motions. (ECF No. 16.) This motion presented largely the same requests as already discussed, and Santos has orally acknowledge that this motion is moot. Accordingly, the Court denies the omnibus discovery motion as such.

//

## II. CONCLUSION

The Court denies the motion for identifying evidence under Rule 12(b)(4)(B) and for disclosure of co-conspirator statements (ECF No. 34); withholds ruling on the motion for a *Daubert* hearing (ECF No. 35); grants in part the motion for a summary of expert testimony under Rule 16(a)(1)(G) (ECF No. 36); denies the motion for discovery of (1) documents showing similar criminal activity and (2) discussing the laboratory processes used by the Government's experts (ECF No. 37); and denies the omnibus discovery motion (ECF No. 16).

SO ORDERED this 10th day of June, 2013.

RAMONA V. MANGLONA
Chief Judge